**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

S.G.,[1]

      **Plaintiff,**

v.                                                                                          Case No. 20-1221-DDC

**KILOLO KIJAKAZI, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

_____

## MEMORANDUM AND ORDER

Plaintiff filed this action under 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's (the "Commissioner") decision to deny plaintiff's claim for Disability Insurance Benefits and Supplement Security Income under Titles II and XVI of the Social Security Act, as amended.  Plaintiff has filed a brief asking the court to reverse the Commissioner's decision denying her claim and remand her claim to the Commissioner for a new administrative hearing.  Doc. 13 at 15.  The Commissioner has filed a response brief, opposing plaintiff's request for judicial review, and asking the court to affirm the Commissioner's decision.  Doc. 14 at 14.  This matter ripened for decision when plaintiff filed a reply brief on March 15, 2021.  Doc. 15.  Having reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision denying plaintiff benefits.  The court explains why, below.

---

[1]      The court makes its Memorandum and Orders available online.  So, as part of the court's efforts to preserve the privacy interests of Social Security claimants, the court captions these opinions using only plaintiff's initials.

## I.       Background

Plaintiff worked as a computer lab manager at a college from 2006 to 2017.  Doc. 12 at

167 (AR 164).  In 2017, plaintiff stopped working because, among other things, of knee and back

pain.  *Id.* at 156 (AR 153).  She then applied for disability benefits, claiming eligibility as of

April 30, 2017.  *Id.* at 16 (AR 13).  Plaintiff's application wound its way through preliminary

proceedings and ended up before an Administrative Law Judge ("ALJ") for a hearing.

ALJs use a five-step process to determine whether a claimant is disabled.  *See* 20 C.F.R.

§ 404.1520(a); 20 C.F.R. § 416.920(a).  First, the claimant must prove she is not currently

engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. §

416.920(a)(4)(i).  Second, the claimant must prove that the impairments she alleges are "severe."

20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii).  Third, a claimant can show that

her impairment meets the requirements of a "Listed Impairment," listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii).  If the

impairment meets or equals one of the listings, the ALJ will declare the claimant disabled.  20

C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii).  If the claimant can satisfy steps one

and two, but doesn't meet a listing at step three, the analysis proceeds to step four.  Fourth, the

claimant must prove she cannot meet the physical and mental demands of her past relevant work.

20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv).  The claimant bears the burden to

prove these first four steps.

Plaintiff lost her case at step four.  At step four, the ALJ must make three phases of

findings.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual
> functional capacity (RFC), and in the second phase, [the ALJ] must determine the
> physical and mental demands of the claimant's past relevant work.  In the final
> phase, the ALJ determines whether the claimant has the ability to meet the job

demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted).

After the hearing, the ALJ issued a decision denying plaintiff's application for benefits. Doc. 12 at 16–25 (AR 13–22).  The ALJ based his decision on a finding—at step four—that plaintiff could perform her past relevant work as a computer lab manger.  *Id.* at 24–25 (AR 21– 22).  Plaintiff filed an appeal with the Appeals Council of the Social Security Administration and the Appeals Council denied the appeal.  *Id.* at 4–6 (AR 1–3).  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the final decision denying her Disability Insurance Benefits and Supplement Security Income.

## II.    Legal Standard

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to this question:  Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Federal courts evaluate an ALJ's factual findings under the substantial evidence standard. "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  The "threshold for such evidentiary sufficiency is not high."  *Id.* at 1154.  Substantial evidence is "more than a mere scintilla."  *Id.* (internal quotation marks and citations omitted).

3

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).

The court must also "'consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases[.]'" *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such failure justifies reversal only in "'appropriate circumstances'"—applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

But the court will "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)).

## III.   Discussion

At step two of the disability determination process, the ALJ found that plaintiff has the following severe impairments: obesity, cervical arthropathy and mild spondylosis, lumbar arthropathy, left knee mild osteoarthritis, and bilateral shoulder impingement status post rotator

cuff repair.  Doc. 12 at 19 (AR 16).  At step three, the ALJ determined that plaintiff doesn't meet a listed impairment.  *Id.* at 21 (AR 18).

Step four is the heart of this case.  In the first phase of step four, the ALJ determined that plaintiff has the RFC to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b), but with a few exceptions.  *Id.*  Specifically, the ALJ found that plaintiff "has the residual function capacity to perform light work . . . except that [plaintiff] is never able to climb ladders, ropes, scaffolds, ramps, or stairs, is only occasionally able to reach overhead with her bilateral upper extremities, and can have no exposure to extreme heat, cold, or wetness." *Id.* Based on this RFC finding, the ALJ determined that plaintiff was capable of performing her past relevant work as a computer lab manager.  *Id.* at 24 (AR 21).  So, the ALJ found that plaintiff isn't disabled within the meaning of the Social Security Act.  *Id.* at 25 (AR 22).

Plaintiff's sole argument on review is that the "ALJ failed to derive an RFC supported by substantial evidence."  Doc. 13 at 5.  This argument contains three subpoints:  (1) the ALJ improperly assessed the medical opinions; (2) the ALJ improperly assessed plaintiff's allegations; and (3) the ALJ's conclusion that plaintiff could perform light work is not supported by substantial evidence.  The court considers each, in turn, below.

### A.    The ALJ did not err in his analysis of the medical opinion and state agency finding.

In his decision, the ALJ considered a medical opinion from Dr. Jeffrey Woodward, M.D. The ALJ was "persuaded by Dr. Woodward's opinion that [plaintiff] was able to lift, push, and pull up to 10 pounds continuously, up to 15 pounds frequently, and up to 25 pounds occasionally, sit up to 8 hours per day, and have unlimited exposure to environmental conditions[.]"  Doc. 12 at 24 (AR 21).  The ALJ noted that Dr. Woodward's "limitations are consistent with the relatively normal findings on his examination and other examinations in the

record." *Id.* But the ALJ was "less persuaded by [Dr. Woodward's] opinion that [plaintiff] is able to stand or walk up to 4 hours per day, reach overhead 1 hour per day, and must alternate sitting and standing."[2] *Id.* Plaintiff argues the ALJ erred when he disregarded this part of Dr. Woodward's medical opinion.

Recent SSA regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). "[T]he SSA is no longer required to 'give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion[.]'" *Melanie Lynne H. v. Saul*, No. 20-1028-JWL, 2020 WL 6262193, at *8 (D. Kan. Oct. 23, 2020) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) and discussing the effect of latest regulations for evaluating medical opinions)). Instead, "the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding." *Monique M. v. Saul*, No. 19-1345-JWL, 2020 WL 5819659, at *4 (D. Kan. Sept. 30, 2020) (citing 20 C.F.R. §§ 404.1520c(c)(1–5), 416.920c(c)(1–5) (2017)). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §

---

[2] The ALJ gave the same reasons for discounting both Dr. Woodward's opinion and the state agency's assessment, adding that the "agency did not have the benefit of reviewing the evidence received at the hearing level, which generally showed unremarkable examination findings." Doc. 12 at 24 (AR 21). So, the court's analysis of the ALJ's treatment of Dr. Woodward's opinion also applies to the ALJ's treatment of the state agency's assessment because, as the ALJ pointed out, "the State agency relied on Dr. Woodward's opinion in forming its assessment[.]" *Id.* And plaintiff doesn't differentiate between Dr. Woodward's opinion and the state agency findings, either. *See* Doc. 13 at 10 ("[W]hile the ALJ indicated that he applied the same rationale when assessing the State agency opinion, the ALJ added that the consultant did not have the benefit of reviewing the evidence received at the hearing level, which generally showed unremarkable examination findings.").

404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).  An ALJ must consider the supportability and consistency factors, but the regulations don't require him to consider the other three factors.  20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

The ALJ may discount "[m]edical evidence . . . if it is internally inconsistent or inconsistent with other evidence."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (citation and internal quotation marks omitted).  The court may "not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax*, 489 F.3d at 1084 (citation and internal brackets and quotation marks omitted).

The question for the district court is "whether the ALJ properly applied the regulations to determine the persuasiveness of the evidence based primarily on the supportability and consistency factors as applied to that evidence."  *Monique M.*, 2020 WL 5819659, at *6.  If the ALJ determined the persuasiveness of the evidence properly, "the question remaining is whether substantial evidence in the record (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the ALJ's decision."  *Id.*  "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ must explain why he adopts some findings, but does not adopt others.  *Id.*

Plaintiff takes issue with the three reasons the ALJ provided to explain why he was "less persuaded" by Dr. Woodward's limitations, *i.e.*:  (1) the objective evidence didn't support the specific limitations; (2) the specific limitations were inconsistent with plaintiff's physical function on other exams; and (3) the specific limitations were inconsistent with plaintiff's activities of daily living.  Doc. 13 at 9–12.  The court considers each reason, in turn, below.

### 1.    Objective evidence

Plaintiff argues "the record does contain some objective evidence to support the limitation in [plaintiff's] ability to stand and walk for only four hours throughout the workday." *Id.* at 11.   Plaintiff cites the following evidence:  (1) total right knee replacement in June 2016; (2) bilateral rotator cuff repair surgery before April 2017; (3) radiating back pain after her right knee replacement; (4) April 2017 exam showing "diffuse tenderness to palpation over low back and bilateral SI joints"; (5) a July 2017 x-ray showing mild osteoarthritic changes to the left knee; and (6) a report of low back pain in 2018.  *Id.*  But the ALJ considered the total right knee replacement.  Doc. 12 at 22 (AR 19).  He considered plaintiff's bilateral shoulder rotator cuff surgery.  *Id.* at 23 (AR 20).  He considered the "diffuse lower back and sacroiliac joint tenderness" from April 2017.  *Id.* at 22 (AR 19).  He considered the July 2017 x-ray.  *Id.* at 23 (AR 20).  And he considered plaintiff's report of pain in 2018.  *Id.*

The ALJ didn't ignore any medical evidence when he disregarded Dr. Woodward's opinion—he discussed every piece of evidence plaintiff identifies.  Plaintiff says the objective evidence supported Dr. Woodward's opinion, but the ALJ concluded the same objective evidence and other evidence did not support Dr. Woodward's opinion.  The court must "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'"  *Newbold*, 718 F.3d at 1262 (quoting *Branum*, 385 F.3d at 1270).  In sum, the ALJ properly considered the consistency of Dr. Woodward's opinion and substantial evidence supports the ALJ's conclusion that objective evidence didn't support Dr. Woodward's limitations.

### 2.    Inconsistent with other exams

The ALJ disregarded Dr. Woodward's opinion, in part, because Dr. Woodward's specific limitations were inconsistent with plaintiff's physical function on other exams.  Doc. 12 at 24

(AR 21).  Plaintiff argues that the ALJ's reliance on inconsistency with other exam findings is "improper because the ALJ relied on inconsistencies that did not exist."  Doc. 13 at 11.

The ALJ considered two medical sources:  a 2017 consultive evaluation with Dr. Woodward and 2018 primary care visits.  Doc. 12 at 22–23 (AR 19–20).  During Dr. Woodward's evaluation, plaintiff reported occasional neck, shoulder, and right knee pain but denied abdominal pain, back pain, muscle pain, and weakness.  *Id.* at 22 (AR 19) (citing Ex. 8F). The ALJ noted plaintiff "performed relatively unremarkably on physical examination."  *Id.* Then, the ALJ considered plaintiff's 2018 primary care visits and noted that plaintiff "exhibited normal physical function on examination, despite complaints of pain."  *Id.* at 23 (AR 20).

Plaintiff argues the ALJ performed "an isolated [re]view of the record[.]"  Doc. 13 at 12. Plaintiff, viewing "the record as a whole," cites:  (1) plaintiff's right knee issues from 2015 to 2016 that led to her total right knee replacement in June 2016; (2) plaintiff's difficulties in physical therapy after her right knee replacement; and (3) plaintiff's reports of lower back pain.[3] *Id.* at 11–12 (first citing Doc. 12 at 237, 239, 384, 433, 517 (AR 234, 236, 381, 430, 514) (documenting plaintiff's therapy after her right knee replacement); then citing *id.* at 626, 674, 688, 725, 727, 729, 730–31 (AR 623, 671, 685, 722, 724, 726, 727–28) (documenting plaintiff's 2015 and 2016 right knee problems); and then citing *id.* at 309–11, 317, 332, 747 (AR 306–08, 314, 329, 744) (documenting plaintiff's reports of lower back pain)).  And, plaintiff notes, the 2018 primary care visit didn't address "gait, range of motion, strength or other findings particularly relevant to her ability to stand and walk."  *Id.* at 11 (citing Doc. 12 at 329, 334 (AR 326, 331) (documenting plaintiff's 2018 primary care visit)).

---

[3]     Plaintiff cites page 314 of the transcript to support her statement about lower back pain.  But, page 314 of the transcript (Doc. 12 at 317) doesn't mention lower back pain.  Instead, it discusses plaintiff's July 2017 left knee x-ray.

Here, the ALJ complied with the regulations—and those regulations required him to consider whether Dr. Woodward's opinion was consistent with the record. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As explained above, the ALJ considered all the evidence plaintiff cites. Doc. 12 at 23 (AR 20). The ALJ didn't perform an isolated review of the record, as plaintiff argues. The ALJ concluded that this evidence is inconsistent with plaintiff's 2018 exams—the most recent exams in the record. Plaintiff argues that the evidence is consistent, but the court may not reweigh the evidence. *Lax*, 489 F.3d at 1084.

Instead, the court considers only whether substantial evidence supports the ALJ's view that plaintiff's physical function on exams is inconsistent with Dr. Woodward's limitations that plaintiff can stand or walk up to four hours per day, reach overhead one hour per day, and must alternate sitting and standing. The record contains substantial evidence to support this conclusion. For example, in the "Low back pain/knees/ankles" section of plaintiff's January 2018 exam, the record reflects only a discussion about the side effects from medications like Aleve and Tylenol. Doc. 12 at 334 (AR 331). Her March 2018 exam report memorializes a similar discussion. *Id.* at 329–30 (AR 326–27). Indeed, a reasonable mind could conclude that the 2018 exam reports normal physical function. And the ALJ considered both exams in his decision. *Id.* at 23 (AR 20) (citing Ex. 12F). Plaintiff counters that these 2018 doctor visits didn't address plaintiff's ability to stand and walk. But the substantial evidence standard doesn't require that level of specificity, it requires "more than a mere scintilla." *Biestek*, 139 S. Ct. at 1154.

In sum, the court concludes, substantial evidence supports the ALJ's conclusion that some of Dr. Woodward's limitations were inconsistent with plaintiff's normal physical function on other exams.

### 3.   Inconsistent with plaintiff's activities of daily living

The ALJ provided a third reason explaining why he was unpersuaded by Dr. Woodward's opinion:  some of Dr. Woodward's limitations were inconsistent with plaintiff's "alleged ability to perform activities of daily living."  Doc. 12 at 24 (AR 21).  The ALJ's decision provided an example:

> [Plaintiff] alleged that she is only able to lift 10 pounds or less, stand for 15 minutes or less, and walk for 5 or 6 blocks.  However, she also reported that she is able to perform housework, like laundry, dishes, dust, sweep, and mop, prepare daily meals, go outside, drive a car, shop in stores several times a week, pay bills, count change, go to family events several times a year, and go to car races several times a year[.]

*Id.* at 23 (AR 20) (citing Ex. 5E) (internal citations omitted).  Plaintiff argues that the ALJ erred in finding these facts exhibited an inconsistency because "[n]one of the activities the ALJ cited conflict with a limitation to standing and walking only four hours in a workday" and plaintiff's "activities were not so robust as the ALJ assumed."  Doc. 13 at 12.

This argument is familiar territory.  The ALJ concluded plaintiff's activities of daily living were inconsistent with some of Dr. Woodward's four-hour limitation.  Plaintiff argues they're not.  Again, the court cannot reweigh evidence.  *Lax*, 489 F.3d at 1084.  The court will not upset a conclusion if it is supported by substantial evidence.  And, indeed, this conclusion doesn't contradict the evidence.  The ALJ cited plaintiff's own testimony about her activities of daily living.  Doc. 12 at 23 (AR 20) (citing Ex. 5E).  For example, plaintiff wrote in her function report that she could do "[h]ousework, (laundry, dishes, dust, sweep and mop floors (not every day though)) off and on throughout the day; watch tv; [and] fix meals[.]"  *Id.* at 186 (AR 183).  This is substantial evidence to support the ALJ's conclusion.

Plaintiff cites three cases to support her argument that the ALJ erred:  *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1163 (D. Kan. 2011), *Otte v. Berryhill*, No. 18-2006-JWL, 2018 WL

5263515 (D. Kan. Oct. 23, 2018), and *Sitsler v. Astrue*, 410 F. App'x 112, 117–18 (10th Cir. 2011). In *Fuller*, Judge Lungstrum of our court concluded that the ALJ improperly discounted a medical opinion. 766 F. Supp. 2d at 1163–64. There, the ALJ failed to explain how the plaintiff's activities of daily living were "inconsistent with Plaintiff's physical and mental impairments combining in the form of a Pain Disorder and precluding work for a 40-hour week." *Id.* (emphasis omitted). But this case isn't like *Fuller*. First, the court notes that *Fuller* involved detailed weighing of medical opinions—something district courts no longer can perform. *See Melanie Lynne H.*, 2020 WL 6262193, at *8 ("[T]he SSA is no longer required to 'give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion.'" (quoting *Watkins*, 350 F.3d at 1300)). Second, unlike *Fuller*, this case doesn't involve combined physical and mental impairments. Last, the ALJ explained his conclusion for this claimant. He cited plaintiff's daily activities that, he concluded, are inconsistent with Dr. Woodward's limitations. Thus, *Fuller* is incongruous. The other cases plaintiff cites—*Otte* and *Sitsler*—concerned the ALJ's treatment of a plaintiff's allegations, not a medical opinion. *See Otte*, 2018 WL 5263515, at *5 ("[ALJ] may not simply disregard *Plaintiff's allegations* because there are other inconsistencies with the evidence." (emphasis added)); *see also Sitsler*, 410 F. App'x at 117–18 ("[A]n ALJ cannot use mischaracterizations of a claimant's activities to discredit *his* claims of disabling limitations." (emphasis added)). The court considers the ALJ's treatment of plaintiff's allegations below. Thus, neither *Otte* nor *Sitsler* helps the court consider Dr. Woodward's opinion.

In sum, the ALJ's conclusion that some of Dr. Woodward's limitations were inconsistent with plaintiff's activities of daily living is supported by substantial evidence. And the court

cannot conclude that the ALJ erred in its evaluation of the medical opinions in the record.  Now,

the court turns to plaintiff's second argument.

### B.    The ALJ did not err in his conclusions about plaintiff's allegations.

The second subpoint of plaintiff's argument concerns the ALJ's treatment of her own

allegations.  The record contains many statements from plaintiff about the intensity, persistence,

and limiting effects of her symptoms.  The ALJ explained:

> In her initial application for disability, [plaintiff] alleged that she is unable to work
> secondary to various issues, including bilateral shoulder rotator cuff injuries, right
> knee replacement, degenerative disc disease, back pain, left knee arthritis, and right
> ankle pain, as well as asthma, gallbladder issues, anxiety, and a poor
> memory . . . .  Due to these conditions, the [plaintiff] alleged that she has difficult
> sitting, standing, or walking for long periods of time, lifting heavy objects, and
> reaching.  At reconsideration, [plaintiff] reiterated her allegations and alleged no
> new or worsening conditions or changes in her ability to perform activities of daily
> living.  At the hearing, [plaintiff] testified that she has problems with her hip, knee,
> and bilateral shoulders, and difficulty working in hot, humid conditions.

Doc. 12 at 22 (AR 19) (internal citations omitted).  The ALJ found that plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms[.]"  *Id.*

But, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms [were] not entirely consistent with the medical evidence and other

evidence in the record[.]"  *Id.*  To reach this conclusion, the ALJ relied on:  (1) a lack of medical

evidence to support plaintiff's allegations; (2) normal exam findings; and (3) plaintiff's activities

of daily living.  *Id.*

"Credibility determinations are peculiarly the province of the finder of fact, and [the

court] will not upset such determinations when supported by substantial evidence.  However,

findings as to credibility should be closely and affirmatively linked to substantial evidence and

not just a conclusion in the guise of findings."  *Cowan v. Astrue*, 552 F.3d 1182, 1190–91 (10th

Cir. 2008) (quotation cleaned up).  So "long as the ALJ sets forth the specific evidence he relies

on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation and internal quotation marks omitted). "[C]ommon sense, not technical perfection, is the [court's] guide." *Id.*

Applying these principles, the court concludes that substantial evidence supports the ALJ's finding that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the record. The ALJ reviewed the record thoroughly, including the surgeries before the alleged onset date to the most recent exams in 2018. Doc. 12 at 22–23 (AR 19–20). The court will not substitute its judgment for the ALJ's conclusion that the 2018 exams reflect essential normal findings. Next, the court considers plaintiff's four arguments and explains why it finds them unpersuasive.

*First,* plaintiff argues that evidence in the record supports her statements about her limitations. Doc. 13 at 13. But she cites her own testimony—the very testimony the ALJ discounted.[4] And the ALJ considered much of the evidence she cites. For example, she cites her function report, where she alleged "that her conditions kept from sitting, standing, and walking for long periods of time." *Id.* (citing Doc. 12 at 185 (AR 182)). The ALJ considered this function report, and cited the portion of the report where plaintiff "reported that she is able to perform housework, . . . prepare daily meals, go outside, drive a car, shop in stores several times a week, pay bills, count change, go to family events several times a year, and go to car races several times a year." Doc. 12 at 23 (AR 20) (citing Doc. 12 at 185–195 (AR 182–92)). The court will not disturb the ALJ's judgment about the function report. *Lax*, 489 F.3d at 1084.

---

[4] Plaintiff's brief also misstates the record. For example, plaintiff cites her testimony that "despite a knee replacement in 2016 and physical therapy, her right knee continued to hurt and feel unstable causing her to use a cane often for stability." Doc. 13 at 13 (citing Doc. 12 at 50 (AR 47)). But this description mischaracterizes plaintiff's testimony. She testified that she used a cane to "help steady" her because she was "a fall risk." Doc. 12 at 50 (AR 47). And, she never testified that her right knee caused her to use a cane. *See generally id.*

Plaintiff also claims that "the record supports [her] allegations including objective imaging and the need for surgery, pain medication, and steroid injections." Doc. 13 at 15. But this isn't supported by the record at all. The ALJ concluded objective imaging showed "some moderate degeneration." Doc. 12 at 23 (AR 20). The only surgeries in the record—right knee arthroplasty and shoulder surgery—occurred before the alleged onset date of the claimed disability. *Id.* The steroid injections occurred before the right knee arthroplasty. *Id.* at 725 (AR 722). And, since those surgeries and steroid injections, plaintiff's right knee has improved, and exams showed "essentially normal findings." *Id.* at 23 (AR 20). Plaintiff's use of pain medication—use that isn't entirely fleshed out in the record—doesn't conclusively show plaintiff's allegedly limited ability to stand and walk. Ultimately, the record doesn't rehabilitate plaintiff's statements.

  *Second*, plaintiff argues that the ALJ ignored and mischaracterized evidence. "[A]n ALJ cannot mischaracterize or downplay evidence to support his findings." *Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017). Specifically, plaintiff says the ALJ ignored her right knee problems. Doc. 13 at 13. But, far from ignoring her right knee, the ALJ considered that, after plaintiff's right knee replacement, doctors manipulated the knee under anesthesia to relieve her stiffness, and the stiffness improved. Doc. 12 at 22 (AR 19). And the ALJ cited evidence that, in September 2016, a follow up appointment after plaintiff's right knee surgery concluded she had improved enough to return to her activities of daily living. *Id.* (citing Ex. 14F). Plaintiff also argues that the ALJ mischaracterized the evidence about her daily living activities, citing *Otte* and *Sitsler*. Doc. 13 at 12–13. In *Otte*, the ALJ improperly disregarded plaintiff's allegations without explanation because plaintiff's allegations were inconsistent with her activities of daily living, but plaintiff had Ménière's disease, and symptom "variation is recognized as normal with Ménière's disease." 2018 WL 5263515, at *5. Here, plaintiff doesn't

argue that her statements were inconsistent because her symptoms varied, she argues her statements weren't inconsistent at all. *See generally* Doc. 13. And, here, the ALJ explained himself, specifically listing the daily activities he found inconsistent with plaintiff's allegations. Doc. 12 at 23 (AR 20). In *Sitsler*, the ALJ mischaracterized the extent of plaintiff's daily activities. 410 F. App'x at 118. Here, unlike *Sitsler*, the ALJ accurately recited plaintiff's own testimony about her daily activities. Doc. 12 at 23 (AR 20) (citing Ex. 5E). Plaintiff cites evidence that her "activities were not so robust as the ALJ assumed[,]" Doc. 13 at 12, but she can't show error by "the mere fact that there is evidence which might support a contrary finding[.]" *Nicholas P. S. v. Saul*, No. 20-2360-JWL, 2021 WL 2711172, at *7 (D. Kan. July 1, 2021). Indeed, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Id.* (quoting *Lax*, 489 F.3d at 1084). Thus, the court cannot find that the ALJ improperly mischaracterized and ignored evidence.

*Third*, plaintiff argues the ALJ improperly discounted her allegations based on a lack of treatment because he didn't consider that she lacked treatment because she's uninsured and can't afford to go to the doctor. Doc. 13 at 14. Plaintiff correctly states that an ALJ may consider an individual's attempts to seek medical treatment when evaluating an individual's statement about the intensity, persistence, and limiting effects of her symptoms. *Id.* (citing SSR 16-3P, 2017 WL 5180304, at *8–9 (Oct. 25, 2017)). But her argument mischaracterizes the ALJ's decision. The ALJ didn't say anything about limited treatment, much less the frequency or extent of plaintiff's treatment. Instead, he focused on the medical evidence supporting her allegations. The ALJ simply noted that "[a]fter the alleged onset date, the record contains very little medical evidence to support [plaintiff's] allegations, particularly between mid-2018 and the date of the hearing."

Doc. 12 at 23 (AR 20).  And, as the ALJ explained, the "evidence that is available reflects essentially normal findings on examination, other than reports of tenderness and pain[.]"  *Id.*  So, the ALJ didn't rely on a lack of treatment to discount plaintiff's allegations.

*Fourth*, plaintiff argues that normal exam results during 2018 "provide no insight" into plaintiff's allegations of back pain and standing and walking limitations because the exams didn't address gait, range of motion, or strength.  Doc. 13 at 14–15.  But, as explained above, that doesn't change the results of the exam.  A reasonable person could conclude that the 2018 exam showed normal findings and plaintiff doesn't have the standing or walking limitations she claimed.  And that's all that substantial evidence requires:  "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion."  *Biestek*, 139 S. Ct. at 1154.

In sum, the ALJ "set[] forth the specific evidence he relie[d] on in evaluating the claimant's credibility," and, so, the court concludes that the ALJ didn't err in evaluating plaintiff's statements.  *Keyes-Zachary*, 695 F.3d at 1167.

### C.    The ALJ did not err in his conclusions about plaintiff's RFC.

Unclouded by the medical opinions and plaintiff's allegations, the court now considers plaintiff's argument that the ALJ's RFC finding had erred because the record evidence doesn't support his conclusion.  The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It determines the most individuals can do, despite their limitations.  *Id.* ("RFC is not the *least* an individual can do despite his or her limitation or restrictions, but the *most*.").

The "ALJ, not a physician, is charged with determining a claimant's RFC from the medial record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The RFC assessment is an administrative determination, not a medical one. *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). The ALJ should base the RFC determination on "all of the evidence in the record, not only the medical evidence[.]" *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).

The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7. But, the ALJ need not discuss every piece of evidence as long as the findings demonstrate the ALJ considered the whole record. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Our Circuit has "rejected the argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Id.* at 1288–89 (quotation cleaned up).

Here, the ALJ determined that plaintiff "has the [RFC] to perform light work[.]" Doc. 12 at 21 (AR 18). But the ALJ also provided that plaintiff "is never able to climb ladders, ropes, scaffolds, ramps, or stairs, is only occasionally able to reach overhead with her bilateral upper extremities, and can have no exposure to extreme heat, cold, or wetness." *Id.* The ALJ explained that, in reaching this finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of" 20 C.F.R. §§ 404.1529 and 416.929, and SSR

16-3p. *Id.* Also, the ALJ said he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of" 20 C.F.R. §§ 404.1520c and 416.920c. *Id.*

In a nutshell, plaintiff argues that she can't perform her past relevant work because she can't stand and walk for more than four hours per day. The ALJ concluded that plaintiff could perform light work and could perform her past relevant work as a computer lab manager. "Light work" as defined by the regulations involves "a good deal of walking or standing[.]" 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). The vocational expert testified that a person with plaintiff's restrictions capable of performing light work could perform as a computer laboratory manager. Doc. 12 at 52 (AR 49). But the vocational expert also testified that, if a person like plaintiff could stand and/or walk for only four hours in an eight-hour workday, that person could not perform as a computer laboratory manager. *Id.* at 53 (AR 50). Plaintiff disputes the ALJ's conclusion about her ability to stand and walk. She argues the ALJ erred when he relied on: (1) improvement with treatment, (2) normal exam findings, and (3) plaintiff's lack of treatment after her total right knee replacement. The court considers each argument, below.

### 1.     Improvement with treatment

Plaintiff argues that the "ALJ's reliance on improvement with treatment was insufficient to support a finding that [plaintiff] retained the ability to stand and walk for the duration required in light work." Doc. 13 at 7. Plaintiff argues her right knee never improved to the point that she could stand and walk for six hours in a workday and she cites evidence of other severe impairments that also impacted her ability to stand and walk. *Id.* Specifically, plaintiff cites an antalgic gate and difficulty with deeper stairs from a 2016 physical therapy visit, radiating back pain in April 2017, diffuse tension to palpation over her lower back and bilateral sacroiliac

19

joints, a prescription for methocarbamol and a muscle relaxer, a July 2017 left knee x-ray, and a 2018 report of low back pain. *Id.* at 7–8.  Plaintiff also cites Dr. Woodward's observation of back pain, right knee tenderness, joint warmth, mild edema, crepitus with flexion, left knee patella tenderness, and abnormal antalgic pattern with pain.  *Id.*

The ALJ performed a "careful consideration of the entire record[.]"  Doc. 12 at 21 (AR 18).  And, again, he considered all the evidence plaintiff cites.  *See id.* at 22 (AR 19) (noting plaintiff's right knee "was fully weight-bearing without assistance and had returned to most of her activities of daily living" after she underwent right knee manipulation under anesthesia after her right knee arthroplasty); *see also id.* (noting plaintiff's report of back pain in April 2017); *id.* (noting plaintiff "exhibited some diffuse lower back and sacroiliac joint tenderness"); *id.* at 22– 23 (AR 19–20) (noting Dr. Woodward's evaluation and concluding plaintiff "performed relatively unremarkably on physical examination" despite "right knee crepitus with mild edema and joint warmth, antalgic gait, and reports of back pain, shoulder pain, and right knee pain"); *id.* at 23 (AR 20) (noting plaintiff's July 2017 x-ray that showed mild to moderate degeneration); *id.* (noting plaintiff's 2018 primary care visit and concluding plaintiff "exhibited normal physical function on examination, despite complaints of pain").  So, the ALJ considered all of the medical evidence that plaintiff cites and he concluded that plaintiff's right knee improved with treatment.  The ALJ also considered plaintiff's other severe impairments.  This court must "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'"  *Newbold*, 718 F.3d at 1262 (quoting *Branum*, 385 F.3d at 1270).  The court concludes that the ALJ did not error when he considered plaintiff's right knee improvement in his RFC determination.

### 2.    Normal exam findings

Plaintiff also argues that the ALJ improperly relied on normal exam findings because the "records from 2015 through 2017 consistently revealed abnormalities that conflict with the conclusion that [plaintiff] could stand and walk for six hours in a workday." Doc. 13 at 8. And plaintiff argues that the ALJ improperly relied on the normal exam findings from her 2018 primary care visits because he "failed to explain how some normal examination findings from primary care visits in 2018 supported the ability to perform light work[.]" *Id.* But, as explained above, the ALJ conducted a thorough review of the record. He cited plaintiff's imaging records and exam results. *See* Doc. 12 at 22–23 (AR 19–20). The court will not disturb the ALJ's conclusion that the medical evidence shows normal findings. The court concludes the ALJ satisfied his obligation to "describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment[.]" *Terry v. Colvin*, No. 14-2110-JWL, 2015 WL 400907, at *11 (D. Kan. Jan. 28, 2015) (citation and internal quotation marks omitted).

### 3.    Lack of treatment

Last, plaintiff argues the ALJ erred in his RFC conclusion because he "heavily" relied on plaintiff's lack of treatment. Plaintiff argues that the "lack of treatment does not speak to any functional limitation." Doc. 13 at 9. But, as explained above, it's not clear from the ALJ's opinion that he ever considered a "lack of treatment"—much less heavily relied on a lack of treatment. Indeed, plaintiff fails to cite any part of the ALJ's decision where he considered plaintiff's lack of treatment. *See id.* at 9; *see also id.* at 13–14. And plaintiff's argument ignores all of the evidence the ALJ did consider when he reached his RFC conclusion.

### 4.    Conclusion

The ALJ conducted a thorough review of the evidence.  Based on that evidence, the ALJ reached his conclusions about plaintiff's RFC and explained it was "supported by the medical evidence, including relatively unremarkable findings on examination, modest diagnostic imaging studies, medical opinions and, to a lesser extent, [plaintiff's] allegations."  Doc. 12 at 24 (AR 21).  Thus, the ALJ's decision included the required "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7; *see also Terry*, 2015 WL 400907, at *11 (explaining that SSR 96-8p's required narrative discussion doesn't require "citation to a medical opinion, or even to medical *evidence* in the administrative record for each RFC limitation assessed" but does require the ALJ to "describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment" (citations and internal quotation marks omitted)).  The ALJ's decision shows that he considered the entire record and appropriately cited his reasons for accepting and rejecting the record evidence used to support his RFC determination.  *Clifton*, 79 F.3d at 1009–10.  Thus, the court concludes that the ALJ didn't err in reaching his conclusions about plaintiff's RFC.

## IV.    Attorney's Fees

Plaintiff asks the court to award her costs and attorney's fees.  Doc. 13 at 16.  The Equal Access to Justice Act provides that a court must award "fees and other expense" to "a prevailing party other than the Untied States[.]"  28 U.S.C. § 2412(d)(1)(A).  But, plaintiff did not prevail in this action.  So, the court denies her request for attorney's fees.

## V.    Conclusion

After considering the briefs submitted and conducting its own review of the administrative record, the court concludes that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits and Supplement Security Income is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 23rd day of March, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**